Good morning, Your Honors. Adrian Bacon for the plaintiff-slash-appellant, Audrey Fober. May it please the Court, the Ninth Circuit and the FCC have both observed several times that the TCPA is, at root, a consumer privacy statute. It's designed to protect consumers from intrusive calls that are made with auto dialers without their prior expressed consent. Well, consent is the main issue here because the enrollment form says, big letters, Use and Disclosure of Protected Health Information. It says, I acknowledge and understand that these various entities may disclose this information for purposes of health plan operations, including but not limited to quality improvement. So why isn't that an expressed consent to get a call about quality improvement? The nail on the head is the primary issue in this case. We think it's not because of what we've proposed to be a two-part test with respect to how you assess the scope. And importantly, consent is an affirmative defense. It is the defendant's burden to bear, and we don't think that they have, as I'll demonstrate to you. Your client signed that, right? Yes, she did. And it reads, I mean, with ellipses, it reads exactly as I read it. So there isn't really a factual issue in a burden sense. The only question is whether that wording consents to receive calls about quality of medical care. I disagree with that, Your Honor. I will tell you why. Scope is something that deals with not just the scope of the words on the page, but the scope of who has consent to place calls. Is there any ambiguity in the word or phrase quality improvement? For purposes of today's argument, Your Honors, we're not going to raise that argument. So isn't this a contract? It is, Your Honor. It's a contract between our client and Health Net, her insurance provider. Well, then why don't we give deference to the words as written? I agree. That's the analysis. The important thing here, though, from our perspective is that the company that we have brought the lawsuit against who has made the calls was not acting as an intermediary of the company who the contract belongs to that you're looking at. An analogy I thought of when preparing for today. Let me ask you to address that because what gives me trouble about that argument, your argument seems to be your client may have consented to receive calls from someone, but not these people, right? Yes, correct. What do you do with the word disclose? And I'm looking now at the enrollment form, not the intake form. It says disclose. It's obvious that Health Net is going to have to disclose it to someone because it doesn't need to disclose it to itself. So doesn't that word encompass the notion that somebody other than Health Net is going to be making the calls? Absolutely, potentially, but Health Net wasn't making the call. Sorry, Health Net or a Health Net intermediary was not making these calls. That's the problem, and we know that. But there's a chain that goes from Health Net here to the caller. They got the information. The information was disclosed. It came from Health Net and went to the caller. No, not exactly. I'll direct Your Honors to look again at the statement of genuine disputes of support of facts that was submitted in support of defendant's motion, specifically items 10 and 11, and specifically- But is there any dispute that, and I've got this in my, I've got the record sites if you need them, that Regal obtained Fober's contact information from Health Net? Regal may have obtained the information from Health Net, but Regal- And is there any dispute that the calling organization got the information from Regal? That's the issue, is that, yes, they got it from Regal, but not through that form. So Health Net disclosed it to Regal, and Regal then disclosed it to the calling organization, right? No. Well, yes, but no. What happened with respect to the chain of events in this case is that her doctor's office got her information on her intake form. I'm trying to separate her doctor's office out of this for a moment and deal only with the consent given to Health Net. There's a separate chain of events that occurs from the doctor's office, but what I described just then, isn't that what occurred with respect to the information given to Health Net? There was information provided by Health Net to Regal, and there was information provided to MTC from Regal, but those are not the same issues. I want to give you an example. So I was correctly describing the way Health Net's information flowed down to the defendant. It didn't flow down. It flowed and split into two separate chains. There's a chain that goes from the doctor's office down to MTC, and there's a chain that goes from Health Net to Regal and then ends. The chain that goes down to MTC came from the doctor's office, and so what our position is is that MTC was acting as an intermediary, but only of the doctor's office, not of Health Net, and the group me order talks about intermediary status. What's the factual basis for that contention? The factual basis is in the disputes of facts. And how that violated the contract? The contract is a separate contract from the intake form, which was the source of consent from the transaction. So as long as we stick to the enrollment form, everything is fine. Your argument concerns then only the intake form? My argument is that the enrollment form has absolutely nothing to do with why these calls were being made. Well, the Sixth Circuit has held that it doesn't really matter how the caller obtains the plaintiff's number if the plaintiff took steps to make the number available for the purpose that's involved and ultimately to the caller who's involved. But it doesn't matter whether they're intermediaries. The point is because the recipient of the call, it's the exact same call no matter who does it. So if you consent to be called about a certain topic, why does it make any difference in the statute or in logic? I'd like to give an example which will illustrate the problem. Imagine that you give your consent to Toyota to call you about recalls and to call you about warranties and product updates because you buy a car at their dealership and you sign a form and you say, you have my consent to call me for any of these purposes whatsoever. Okay. Now imagine three years later you go to Pep Boys. It doesn't say that. It says disclose. It doesn't say call me. It says you may disclose this, but go ahead. Now imagine you go to Pep Boys three years later and you buy an air freshener with your credit card and Pep Boys yanks your credit card information off which has your phone number in it and then they start auto dialing you and you say, well, I didn't give you my consent. About the recalls? No. Well, see, that's the thing. This is the exact thing that was consented to. It's about quality assurance of medical care. It's not about upselling or air fresheners or anything. It's about the exact thing that was consented to. That's where I have difficulty with your argument. Isn't the prudential underpinning here to expectation? In your example, as it began, the expectation was that she could get calls about recalls. That had nothing to do with the, you know, the Pep Boys or whatever. That's kind of like a false equivalent. So why were her expectation interests frustrated here about what happened? Since she knew that she had given consent to give calls about quality of care, quality improvement. Because the person who was calling her about quality improvement wasn't an agent of the person who she gave. Let me understand your argument. If Health Net had made these calls, you would have no complaint. That's correct. What greater statutory interest was violated in this circumstance by the fact that the calls were made by, I forget what, by MTC. I'm trying to think of the abbreviation. Then by Health Net directly. Consumers have a right to. No, tell me what. The statute is designed to protect you against unwanted robocalls. Right. This is a wanted robocall. It just was dialed by the wrong person. Is that your position? It was dialed by somebody who didn't have permission to make it. I can give consent to Burger King to call me about burgers. But that doesn't mean McDonald's can call me about burgers. I gave my consent to Burger King. But if you gave your consent to Burger King to disclose your information to others. For the purpose of finding out how you like burgers. For a specific purpose. And somebody else called you about Burger King burgers. Your position is that would violate the statute. It would if that person. Only Burger King can call you. No. Anybody who's an intermediary of Burger King could call me. Where's that in the statute? That's in the 2014 GroupMe order from the FCC. Tell me where in the grouping order it says that one may not pass on information. That ends up that somebody does exactly what you could have done had you had the permission. Well, what it says. And I'm running out of time. Yeah, but tell me. Okay. What it says is that anybody who is an intermediary in the chain has authority. Because it is granted through an intermediary status as an agent of that person in the chain. I understand it says that. Where does it say that it is prohibited from passing it on to somebody who's not a so-called intermediary in the chain. As long as they stay within the boundaries of the original consent. The factual issue here is that's not what happened in this case. We know that from the statement of undisputed facts. Because MTC was calling plaintiff to provide her medical care providers to survey her experience. It doesn't say anything about her healthcare, her HealthNet affiliation. But this, I think, surely HealthNet's idea here was we want to be able to check on the doctors that you're dealing with in our system. I agree 100%, Your Honor. However, that's not what HealthNet. That's a medical care provider. But HealthNet wasn't doing that here. Factually, that's not what was happening. No, somebody else was doing it on their behalf. No, nobody was doing it on their behalf. The doctor's office was doing it and was hiring MTC to do it for them. But still calling about quality of care. That's what concerns me is that she gave her permission. She had an understanding that she would be called about quality of care. So someone called her about quality of care. Now she's complaining about it. Is that right? That's kind of right. She's complaining about the fact that the person who's calling her has no consent to do it. Not that the types of calls that she was getting were necessarily outside of that scope. Yeah. We've been focusing on the enrollment form. The intake form gives the doctor her phone number, right? Yes. Village Fitness, as I read it, seems to say if you give your phone number to somebody who provides a service, then you've effectively consented to being called by that person about the service. Do you disagree with that reading of Village Fitness? I don't necessarily disagree with that reading. I think it's a little more subtle than that. Wouldn't giving your phone number to the doctor's office in and of itself give rise to consent to being called by a representative of that office to see how the services were? Yes, if there was no limiting language on that intake form, which there was. And that goes to the second part of the scope analysis. Well, but I'm not talking about the form. The form just says that you can release information for purposes of processing. Your client gave her phone number to the doctor's office. You don't have to do it on the form. She gave her phone number. And Village Fitness seems to say if you give your phone number to a provider of services, then you've effectively consented to being called by that provider about the services that were rendered. So why doesn't that solve your intermediary problem? The Satterfield case talks about this, which was also a Ninth Circuit decision and is, I think, the corollary to the Van Patten case that you're referring to. Satterfield says that if there is consent that is on a written piece of paper, that it has to be clear and unmistakable and that you have to look at the scope of that written on the form and see whether or not it falls within that scope. And so our position is that the language that limits that to debt collection calls and calls relating to processing an insurance claim limits it to those types of phone calls and that anything that falls outside that scope is not what's written on the form itself. I understand. Thank you, counsel. You've exceeded your time, but we asked a lot of questions.  Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Harrison Brown. I'm counsel for the Defendant Appellee Management Technology Consultants, LLC, or MTC. This case is not about boundless consent for any party to call any person for any reason. This case is about the common sense application of a straightforward FCC rule, which says persons who knowingly release their phone numbers give consent to be called at those phone numbers absent instructions to the contrary. In this case, the District Court said that Ms. Fober, when she released her phone number knowingly in connection with receiving medical care, received a phone call about the medical care, consented to that phone call. This Court should affirm the District Court for those reasons. We heard a lot today already about intermediary status, but there are undisputed facts in the record and undisputed facts by the District Court at pages 2 through 4 of its opinion, which plaintiff did not challenge in the District Court and has not even addressed here on appeal. Very simple. Regal and ADOC are in the Heritage Network. Regal manages the patient satisfaction surveys for all the entities in the Heritage Network. When HealthNet or any other health plan receives a request to process an insurance claim, it transmits that information to Regal, then Regal outsources that to MTC to call the patients in order to process the health insurance claim. We've talked about this in our briefs in the District Court, and we talked about it here on appeal, and it went unaddressed in the reply brief. Does it matter, and I take it your colleague's argument is that the phone number, if you were to trace this little piece of information, was actually provided by Regal to MTC approximately caused by it being provided by the doctor's office rather than by HealthNet. Does that matter? It was actually provided by HealthNet, Your Honor, and it does not matter, though. He says there's a dispute on that issue. Do you agree? No, there is no dispute on that issue. The court made a finding of fact on that, and it's clear as day in black and white on page 247, paragraphs 6 through 9. How can it make a factual finding in a summary judgment? That doesn't track for me. Well, it made a finding that plaintiff didn't dispute that, Your Honor. Oh, okay. So you're saying that it was an undisputed fact, not that there's a factual finding. Correct, yes. But your view is it doesn't matter, that they're all one big family? No, I mean, it does matter. I think Ms. Fober has a point that take the Satterfield case, for example. If I give my phone number in order to receive ringtones, and then all of a sudden I receive a text message about a Stephen King novel from an unrelated publisher entity, then, yeah, that would cause a problem. But here there's direct privilege. Does village fitness stand for the proposition that I suggested to your colleague that if you give your phone number to a provider of services, then you've consented to be called by that provider to see how you like the services?  That's exactly right, Your Honor. In this case, Ms. Fober gave her phone number to Health Net. Health Net gave the phone number to her. That would be true even absent a release. That would be true, Your Honor. Now I want to get to your colleague's point. Can the written contract then limit that? He says, at least with Dr. Schwartz, all she consented to was information to be used for processing insurance claims and referrals, and therefore even in the absence of that, she might have gotten a phone call about Dr. Schwartz's services. She had limited her consent. Sure, Your Honor. Respond to that? Yes. Let's pretend the forms don't exist for a second. Ms. Fober simply gives her phone number to a receptionist at the desk at Dr. Schwartz's office, and the receptionist writes it down on a sticky note. Then the receptionist goes and processes an insurance claim for that phone number. Processing an insurance claim in this day and age under the Affordable Care Act includes conducting patient satisfaction survey calls. Unless Ms. Fober gave limiting instructions, going back to the 1992 FCC order, the magic language there, absent instructions to the contrary. Unless Ms. Fober gave instructions to the contrary, then she does consent to be called. Take this Court's decision from 20- So the language in the intake form is not an instruction to the contrary but rather permission to do certain things with information. It's icing on the cake, Your Honor. We didn't need a form. This form just makes it that much more clear that she could have expected to receive quality improvement calls from other entities. Take the 19- No, I'm talking about the doctor's intake form. The doctor's intake form, too, says process claims and referrals. If that was- claims and referrals includes patient satisfaction survey calls under the ADA. Is that the way you understand it? Yes, Your Honor. I don't understand that language to mean insurance claims and referrals to other physicians. It's not an insurance claim referral to other physician. It's this physician processing this patient's insurance claim. Let's put it this way. No, I understand. But it doesn't have the same kind of language that the enrollment form has, which expressly refers to quality management and things like that. Sure. It does not have the same kind of language. But processing claims and referrals necessarily includes- Well, processing claims and referrals is not the same as quality improvement. That's like getting the bill paid. Of course. Of course. But it's- there is a distinction. And in the Affordable Care Act, Congress said that in order to- for a medical provider- excuse me, not a medical provider. In order for insurer like Health Net to receive all the money that it would be due to, they must do these patient satisfaction surveys. Essentially what happens is a certain percentage of money is held in trust by the government, and then the Health Net insurance company must be able to show the government that we, our patients are sufficiently satisfied in order for the government to release the remainder of that money to Health Net. So processing that insurance claim includes conducting patient satisfaction surveys. No, I understand that. But the intake form, unlike the enrollment form, doesn't say that. That's right. And the intake form could have said that. It could have been an easy fix if it added the language about quality improvement, right? Yes. The district court didn't analyze. The district court's decision did not rely, however, on the intake form, did it? It did not. Okay. So should that affect our calculus here at all? No, Your Honor. Why not? Either the enrollment form or the intake form was sufficient in order to allow MTC to call Ms. Vober. The district court found that and didn't need to get to the intake form for that reason. Put it differently, Your Honor. If Ms. Vober was uninsured and she had visited Dr. Schwartz, she never would have received these patient satisfaction survey calls from my client. The only reason she received the patient satisfaction survey calls is because she had insurance and we went through the direct chain of privity all the way to MTC. Ms. Vober, Health Net, Regal, MTC. That's why she received the calls. Could you address your colleague's argument that MTC was not an intermediary? That's just wrong, Your Honor. There is undisputed evidence in the record that shows that these parties had a direct contractual relationship, and he cited the 2014 group me order. That group me order is in the addendum to the record at pages 81 and 83, paragraphs 7 and 11. And that order essentially says, you don't have to be the person who received the phone number in order to place that call. And we have cases to that effect. Bayeson in the Sixth Circuit, Mayes in the Eleventh Circuit. Both cases, somebody walks into a hospital for receiving medical care from the hospital, gives their phone number on an intake form to the hospital. Hospital has a debt. They hire a debt collector. Debt collector calls the plaintiff. Consent was given in that circumstance, and that's exactly what we have here. Ms. Fover went to her doctor. When it was time to process her insurance claim, Health Net gave the phone number to Regal. Regal gave the phone number to MTC, and MTC called Ms. Fover. Direct privity, Your Honor. At the end of the day, this is simply about consent. It's about common sense. We don't need a two-part bright line test in order to tell us to use our heads. Judge Graber, you joined the opinion in 2012, Chesbrough versus MTC, and there's a quote in there which pretty much every TCPA brief on both the plaintiff and defendant side has said and quoted since then, and that is, we apply the TCPA with a measure of common sense. Common sense dictates that when Ms. Fover went to the doctor's office and when she asked to have her insurance claim processed, that she would receive calls about her medical care. Icing on the cake, she signed forms that said, I agree to be called about quality improvement. That's it, Your Honors. And unless Your Honors have any more questions, I'll yield the rest of my time. I don't think we do. Thank you. Thank you. Mr. Bacon. Thank you, Your Honor. I just want to address factually, there is a dispute as to whether or not there is a chain of privity from Health Net down to MTC. It is defendant's burden to have proven that, and there are no statement of fact sections which address that point at all. I would invite Your Honors to look at that again, specifically numbers 10 through 12, which talk about the fact that MTC was calling plaintiffs to follow up and survey her about her experiences with her doctor. You can look at the actual call log itself and see that those calls happened immediately after each of the two times that she visited her doctor. They were not calling her because Health Net contracted them to. And, in fact, the contracts themselves flow through Dr. Schwartz's office, not through Health Net. But even if MTC received her number indirectly, it wouldn't make a difference to the outcome in this case, would it? I don't think it would, and I think that's highlighted by the Albert Nigro versus Mercantile Adjustment Program. Why is there a different analysis with respect to the privity chain that you just raised? The point that the plaintiff is raising is that there is no privity chain connecting the enrollment form to the calls that were actually made. Van Patten talks about transactional context. I think that's the key term here, the transactional context of the call related to the doctor's visit, not to the fact that she had insurance. And that is important. It's very important because if that is not satisfied, then there is no scope with respect to whether or not consent was provided to MTC for these calls. Perhaps it could have flown to them for some other reason, but not for this reason. And that's what our point is, and that's why we don't think the enrollment form applies here. Thank you, Counsel. Thank you, Your Honor. The case just argued is submitted, and we appreciate the arguments from both of you.
judges: Graber, Hurwitz, Marbley